IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BUFFY ANN DYER                                                                                   PLAINTIFF

V.                                            NO. 20-5069

WALMART, INC.                                                                                    DEFENDANT

## COMPLAINT

Plaintiff states for her Complaint:

**I.   Nature of Action.**

1. This action is brought for legal and equitable relief under The Equal Pay Act of 1963, 29 U.S.C. 206(d), Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-2, and the Arkansas Civil Rights Act, Ark. Code Ann. 16-123-107.

**II.  Parties, Jurisdiction, and Venue.**

2. Plaintiff is a female who resides in Benton County, Arkansas.

3. Defendant is a foreign corporation authorized to do business in Arkansas, which maintains its principal place of business in Benton County, Arkansas, which engages in interstate commerce, and which employed more than 500 people at all times relevant to this action.

4. All events related in this Complaint which concern Plaintiff's employment with Defendant occurred in Benton County, Arkansas.

5. This Court has jurisdiction over the parties to and the issues of this action.

6. Venue for this action is properly laid in this Court.

**III.     General Allegations.**

7. Plaintiff worked for Defendant for 22 years.  Plaintiff had an excellent work history with no disciplinary history.  Plaintiff's last position was as Senior Director of Regional Transportation.

8. Plaintiff managed the second largest region in Defendant's network, was responsible for over 1,200 truck drivers, over 500 associates/managers, managing five different common carriers across twelve facilities.  Plaintiff's region was the highest performing region regarding metrics and financials.  Plaintiff's annual evaluations were either "meets" or "exceeds" expectations.

9. Plaintiff reported to Bryan Most, Vice President of Private Fleet – East.  Most was one of five Vice Presidents in Transportation, all of whom were male.

10. Plaintiff was one of 18 Senior Directors in Transportation.  Fifteen of the Senior Directors were male.

11. Plaintiff was the highest ranking female in the Walmart Private Fleet/Transportation for several years.

12. Plaintiff's male counterparts were paid more than Plaintiff was paid for work requiring equal skill, effort, and responsibility, and which work was performed under similar working conditions – even though Plaintiff outperformed them.

13. Plaintiff was chastised for asking pointed questions about the implementation of certain new directives, policies, and procedures.  Plaintiff's male counterparts were not chastised although they had asked similar questions or made comments critical of such new directives, policies, and procedures.  Plaintiff was asked if she had "the guts" to implement these new

directives, policies, and procedures. Plaintiff's male counterparts who had asked similar questions or made critical comments were not asked this question. After this incident,

- Plaintiff's male counterparts were then asked to serve on "workstream" teams to help develop and implement the major changes (such as driver work schedules, associate office staffing, driver pay system changes). Plaintiff was never selected or asked to be on these significant workstream teams.
- Plaintiff's role at annual meetings of field General Managers and General Transportation managers was eliminated. Previously, Plaintiff had been selected to speak at such meetings.
- Plaintiff's immediate boss, Most, would travel monthly with Plaintiff's male colleagues. Most did not travel with Plaintiff. Plaintiff was disadvantaged compared to her male colleagues because Most did not get first-hand information about how well Plaintiff interacted with her team leaders and drivers and how well Plaintiff conducted grassroots meetings.
- Plaintiff's role in Walmart Women in Trucking, an event which Plaintiff created and organized, was eliminated.

14. Plaintiff was wrongly arrested in Nashville, Tennessee, on 11 July 2019 for disorderly conduct and public intoxication. This incident occurred while Plaintiff was on vacation and was not job-related. The charges were quickly dismissed with a verbal apology from the prosecutor.

15. Plaintiff notified Most about the arrest on 15 July 2019 after Plaintiff learned that the charges had been publicized on a third-party website. Plaintiff was under no obligation to report

her arrest under Defendant's written policy which limits self-reporting to arrests involving sexual offenses, drug offenses, theft and other property related offenses, and violence and other offenses against people.

16. Most told Plaintiff to send him an e-mail with details about what had happened but to continue with her plans for time-off through 22 July 2019.  Plaintiff sent such an e-mail to Most on 16 July 2019.  Screenshots of the e-mail Plaintiff sent to Most are attached to and incorporated into this Complaint as Exhibit A.

17. Most and Brent Carr (Director of Human Resources) called Plaintiff on 22 July 2019—while she was still on vacation -- and told her to stay home and not contact her team members because of the "public nature" of Plaintiff's arrest.

18. On the same day, Plaintiff sent to Most and e-mail with an attached letter from Plaintiff's attorney advising that the charges against Plaintiff were for "extraordinarily minor infractions" and that he was confident that the charges against Plaintiff would be dismissed once a court date was set.   A copy of the letter is attached to and incorporated into this Complaint as Exhibit B.

19. Most and Carr fired Plaintiff on 24 July 2019 because Plaintiff had "misrepresented" the facts, that Plaintiff was "dishonest," and her "integrity" was in question.  Most accused Plaintiff of misrepresenting the facts of her arrest based upon the police report.  Plaintiff had not seen the police report and was not shown the report.   It was not, otherwise, explained to Plaintiff how she had been dishonest or misrepresented the facts or had called her integrity into question.

20. Plaintiff's termination contravened Defendant's written policy on non-job related arrests of associates which reads:

> It is generally not appropriate to suspend an associate on the basis that the arrest will cause adverse publicity or adverse reaction to the associate's arrest if there is no other business justification for the suspension.
>
> NOTE: An arrest for DUI/DWI is generally not job related if the associate does not operate a customer/company vehicle.
>
> * * *
>
> If it is determined that the conduct is not job-related, the associate will be allowed to continue working.
>
> * * *
>
> If you are arrested or convicted of a felony or misdemeanor, we will conduct a review to determine whether the charges are job-related i.e., examine the relationship of the charges to your position). If we determine the charges are no job related, you will be allowed to continue working.

See Exhibit C attached to and incorporated into this Complaint.

21. Plaintiff appealed her termination on 25 July 2019 using Defendant's "open door" process.

22. During the open-door process, the criminal charges against Plaintiff were dismissed and the records of her arrest expunged. Plaintiff gave this information to Defendant. See Exhibit D to this Complaint.

23. Plaintiff's termination was upheld on 20 August 2019 without explanation.

24. Plaintiff was replaced by a male.

25. There are at least two instances in which male associates at Plaintiff's level and above were convicted of driving under the influence without losing their jobs.

### IV.  Count I – Violation Of Equal Pay Act.

26. Defendant discriminated against Plaintiff because of Plaintiff's gender by paying higher wages and benefits to Plaintiff's male counterparts for equal work performed under similar conditions.

27. Plaintiff has been damaged by Defendant's discriminatory actions.

28. Defendant's discriminatory actions were willful because Defendant knew at all times that it was subject to the Equal Pay Act but nevertheless paid unequal wages to Plaintiff and her male counterparts.

29. Plaintiff is entitled to judgment against Defendant for all pay disparities between her wages and benefits and the wages and benefits paid to her male counterparts for the three-year period ending with the date this action is filed.

### V.  Count II – Sex Discrimination In Employment.

30. Plaintiff's gender was a motivating factor in Defendant's decision to terminate her employment.

31. Plaintiff's gender was a motivating factor in Defendant's decision to terminate her employment.

32. Plaintiff has been damaged by Defendant's discriminatory action.

33. Defendant knowingly and wilfully terminated Plaintiff's employment in disregard of her right to employment without regard to her gender.

## VII. Exhaustion of Administrative Remedies.

34. Plaintiff filed a Charge of Discrimination on her claims of sex discrimination and equal pay violation discrimination with the United States Equal Employment Opportunity Commission on 07 October 2019.

35. Plaintiff received a Dismissal and Notice of Rights from the United States Equal Employment Opportunity Commission dated 31 March 2020. A copy of this Dismissal and Notice of Rights is attached to and incorporated into this Amended Complaint as Exhibit E.

## VIII. Request for Relief.

36. Plaintiff asks this Court to award her:

A. Judgment against Defendant for all pay disparities between her wages and benefits and the wages and benefits paid to her male counterparts for the three-year period ending with the date this action is filed on her claim for violation of the Equal Pay Act.

B. Back pay on her claims for violations of Title VII of the 1964 Civil Rights Act, as amended, and the Arkansas Civil Rights Act.

C. Liquidated damages as appropriate on her claims for violations of the Equal Pay Act.

D. Damages for emotional distress on her claims for violation of Title VII of the 1964 Civil Rights Act, as amended, and the Arkansas Civil Rights Act.

E. Punitive damages on her claims for violation of Title VII of the 1964 Civil Rights Act, as amended, and the Arkansas Civil Rights Act.

F. Reinstatement into her former position or into a comparable position or front pay in lieu of reinstatement.

G. Interest.

H. Attorneys fees and court costs.

I. All other relief to which Plaintiff proves herself entitled.

37. Plaintiff demands a trial by jury.

                        BUFFY ANN DYER,
                        PLAINTIFF

By:
/s/ Stephen Lee Wood.
Stephen Lee Wood (81170)
Stephen Lee Wood, P.A.
110 South 2d Street
Rogers, AR 72756
479-631-0808
479-631-1711
slwpa@sbcglobal.net

Dyer – Complaint/slw3/2057

-8-